UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:11-cv-00768-JMS-MPB ) |
| CHICAGO TITLE INSURANCE COMPANY, et al. | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON CHICAGO TITLE'S MOTION TO HOLD JUDGMENT DEFENDANT IN CONTEMPT OF COURT AND FOR SANCTIONS**

## I.    Introduction

Judgment Creditor, Chicago Title Insurance Company ("Chicago Title") seeks an entry holding Judgment Defendant, Nickolas W. Jekogian, III ("Jekogian") in contempt of court and to impose sanctions on Jekogian for his repeated failure to comply with the rules and orders of this Court. (Docket No. 156). Jekogian did not respond to the motion. The Honorable Jane Magnus-Stinson assigned this matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned **recommends** Chicago Title's request be **granted in part and denied in part** for the reasons that follow.

## II.    Background

Chicago Title obtained a judgment against Jekogian over six (6) years ago, on June 7, 2013, in the amount of $343,301.39 (Docket No. 97) (the "Judgment"). Since that date Chicago Title has been unsuccessful in satisfying the judgment—which brings the case before the undersigned today to consider this motion for sanctions.

The Judgment continues to accrue interest at the statutory rate. In 2015, Jekogian and Chicago Title entered into a written agreement to satisfy the Judgment. (Docket No. 156 at ECF p. 1). The Agreement provided that Jekogian would make certain periodic payments to Chicago Title. (*Id.*). Chicago Title asserts that Jekogian has breached the Agreement multiple times, which has forced Chicago Title to seek court intervention through proceedings supplemental to attempt to collect on its Judgment and discovery information about Jekogian's assets that could be used to repay the Judgment. (*Id.*).

Chicago Title moves for sanctions against Jekogian for alleged discovery misconduct. The primary misconduct alleged is that Jekogian has failed to abide by this Court's November 5, 2018, Order requiring Jekogian to "supplement and provide answers to, and produce documents responsive to, discovery requests served upon him by Chicago Title in a manner consistent with the September 6, 2018, letter sent by Chicago Title to Jekogian" (Docket No. 153) and by this Court's January 22, 2019, Order requiring Jekogian to reimburse Chicago Title for the $3,640.00 in attorneys' fees incurred in order to file the motion to compel addressed in the Court's November 5, 2018 order. (Docket No. 155). Chicago Title asserts it has not been reimbursed. (Docket No. 156 at ECF p. 3).

The Court's record shows that these failures are just Jekogian's latest in a long line of dismissive behavior towards this matter, both before and after judgment was entered. A review of the post-judgment activity is appropriate. On August 15, 2013, Chicago Title requested a proceeding supplemental (Docket No. 98), which was originally scheduled for September 30, 2013, hearing. (Docket No. 100). The scheduling order warned that disobedience of the order may be punished as contempt. (*Id.*). On September 27, 2013, Chicago Title requested that the hearing be continued as Jekogian was providing answers to written discovery. (Docket No. 105).

Chicago Title also advised that Jekogian had provided it with an address that the Court may use as a service address for Jekogian. (Docket No. 105 at ECF p. 2). On September 30, 2013, the Court vacated the hearing and noted Jekogian's address for the purposes of service. (Docket No. 107).

On July 11, 2014, Chicago Title filed a renewed motion for proceedings supplemental (Docket No. 108) after it was unable to obtain a full accounting from Jekogian and this court set a hearing for August 14, 2014. (Docket No. 109). Again, the Court warned disobedience of the order could be punished by contempt. (*Id.*). Jekogian did not appear at the August 14, 2014, hearing,[1] despite proper service. (Docket No. 113). On December 9, 2014, this Court ordered Jekogian to comply with Chicago Title's earlier propounded discovery requests and warned him that failure to do so could result in being found in contempt of court and the imposition of sanctions. (Docket No. 114 at ECF p. 3). Also on December 9, 2014, the Court ordered Jekogian to appear on January 26, 2015, for a show cause hearing after his August 14, 2014, failure to appear. (Docket No. 115 at ECF p. 3).

On January 21, 2015, five days before the show cause hearing, Jekogian filed an agreed motion to continue the hearing indicating that he had recently retained counsel and was working to resolve the issues, which necessitated the hearing. (Docket No. 118). The Court granted the request and extended the hearing to March 3, 2015. (Docket No. 119). On February 27, 2015, the parties reported they were in the process of finalizing a settled resolution to the matter and again requested the Court to continue the show cause hearing. (Docket No. 120). The Court granted

---

[1] Chicago Title advised the Court it was contacted by two attorneys on August 13, 2014, the day before the hearing, as to Jekogian's whereabouts. (Docket No. 111). One indicated that Jekogian preferred to appear by video deposition on a different date and another informed Chicago Title that Jekogian was currently in Spain. (*Id.*).

that request, indicating that the hearing could be reset by motion of either party. (Docket No. 121).

The parties appeared to be working towards a resolution, at least until October 27, 2015, when Chicago Title reported that Jekogian had failed to make a payment, as agreed, by September 1, 2015; thus, Chicago Title asked for a proceeding supplemental hearing to be set. (Docket No. 122). The Court granted that request, but made clear that it was only rescheduling the previously continued proceedings supplemental and show cause hearing and that it would not enforce the scope of the settlement agreement executed by the parties as such a request was beyond the scope of this litigation. (Docket No. 123). A hearing was set for March 3, 2016 (Docket No. 124), but again Chicago Title filed an agreed motion to continue the hearing indicating that the parties had reached an agreement. (Docket No. 125). The Court granted that request, indicating that the hearing could be reset by motion of either party. (Docket No. 126).

Once again, the parties appeared to be working towards a resolution until, perhaps predictably, October 7, 2016, when Chicago Title reported that Jekogian had failed to make a payment, as agreed, by September 1, 2016; thus, Chicago Title again asked for a proceeding supplemental hearing to be set. (Docket No. 128). The Court set a hearing for November 29, 2016, warning that disobedience of that order may be punished by contempt. (Docket No. 130). On October 25, 2016, Jekogian's counsel indicated that Mr. Jekogian sought to terminate him as counsel (Docket No. 129) and the Court permitted counsel to withdraw by order on October 27, 2016. (Docket No. 131). Since October 27, 2016, Jekogian has proceeded in this matter *pro se*.

Jekogian failed to appear at the November 29, 2016, hearing, and a show cause hearing was scheduled for December 29, 2016. (Docket No. 134; Docket No. 135). [2]

On January 18, 2017, the parties reported that Jekogian would voluntarily update his asset information and that they would work out discovery without further Court involvement. (Docket No. 139). Nonetheless, approximately ten (10) months later, and after Jekogian had failed to make a payment pursuant to the settlement agreement, Chicago Title again requested a proceeding supplemental hearing. (Docket No. 140). The Court set the hearing for December 15, 2017 and warned that disobedience of the Order may be punished as contempt. (Docket No. 142). Despite proper service (Docket No. 143), Jekogian *again* failed to appear. (Docket No. 144). A show cause hearing was set for January 31, 2018. (Docket No. 145). By agreement of the parties this hearing was continued to March 8, 2018, as they had again been in discussions concerning Defendants' assets and liabilities. (Docket No. 147 at ECF p. 2; Docket No. 149). Again, despite proper service (Docket No. 150), Jekogian failed to appear at the March 8, 2018 hearing. (Docket No. 151).

On September 25, 2018, Chicago Title filed the above-mentioned motion to compel after it received inadequate answers to a Second Set of Interrogatories and Requests for Production of Documents served to Jekogian on June 22, 2018. (Docket No. 152). Of interest, this round of written discovery sought to obtain information regarding two trusts that Chicago Title argued "are potentially sources of assets that should properly be subject to execution [to satisfy the judgment]." (Docket No. 152 at ECF p. 4). Prior to serving the motion, Chicago Title provided a

---

[2] Jekogian responded to the show cause entry and the hearing was thereafter vacated. (Docket No. 137; Docket No. 138).

letter to Jekogian detailing the supplementations it sought ("September 6, 2018 letter"), but Jekogian's paltry one-page response was unsatisfactory. (Docket No. 152-7).

The Court ordered Jekogian to supplement in a manner consistent with the September 6, 2018, letter, as discussed above by November 19, 2018. (Docket No. 153). While Jekogian did produce some responses on November 19, 2018, Chicago Title argues that they were not verified or under oath and Jekogian's responses to paragraphs 5, 7, 8, and 9 of the September 6, 2018 letter were woefully deficient. (Docket No. 156-1; Docket No. 156-2). On December 28, 2018, Chicago Title sent *another* follow-up letter to Jekogian summarizing additional and remaining issues with discovery and warning that additional court proceedings may be necessary should Jekogian fail to supplement his discovery by January 15, 2019. (Docket No. 156 at ECF pp. 4–5; Docket No. 156-4; Docket No. 156-5). Chicago Title indicates that Jekogian has failed to provide full and complete discovery responses. (Docket No. 156 at ECF p. 5). Thus, Chicago Title requests that this Court impose further sanctions and find that Jekogian be held in contempt.

### III.    Standard

The Court has the inherent power to protect the integrity of the judicial system and punish those who abuse it by fashioning a sanction proportional to the abusive conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003) (sanction under court's inherent power "should be proportioned to the gravity of the offense").

Rule 37 gives the court authority to sanction a party for discovery misconduct, in particular. A party's failure to comply with discovery orders is misconduct subject to sanctions under Rule 37(b). Making evasive or incomplete disclosures in response to document requests or interrogatories, or in answer deposition questions is another type of discovery misconduct.

R. Civ. P. Rule 37(a)(4). That behavior is treated as a failure "to disclose, answer, or respond," *id.*, and Rule 37(d) permits sanctions under Rule 37(b) to be imposed for that conduct. Discovery misconduct may be sanctioned in any "just" manner, including imposition of various types of sanctions listed in Rule 37(b)(2)(A). Of relevance to this motion, Rule 37(b)(2)(A)(i) and (ii) provides that sanctions may include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence."

Further, an award of attorneys' fees incurred in bringing or responding to a discovery motion must be made in favor of the winning party unless the other's conduct or position "was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. Rule 37(b)(2)(C) and 37(d)(3).

Rule 37 sanctions are appropriate where a party displays willfulness, bad faith, *or* fault in violating his discovery obligations. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)). Willfulness or bad faith may be inferred through a party's "pattern of contumacious conduct or dilatory tactics," and that conduct can lead to the harshest of sanctions. *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993). *See also Newman v. Metropolitan Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992) (affirming sanction of default where, although district court had not made a finding of bad faith, the party's failure to comply with discovery obligations was part of a pattern of noncompliance rather than inadvertent, isolated, or merely careless); *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) (affirming default

judgment against *pro se* defendants where evidence of their bad faith conduct was overwhelming; they rivaled only each other in their level of untruthfulness).

"Fault" as a ground for imposing Rule 37 sanctions considers whether the party's discovery conduct demonstrates objectively a lack of reasonableness. *Marrocco*, 966 F.2d at 224. A party's "extraordinarily" poor judgment or "gross" negligence as opposed to a mere mistake or carelessness may warrant harsh Rule 37 sanctions. *Id.* (directing verdict in favor of plaintiff where defendant flagrantly disregarded its duty "to preserve and monitor the condition of evidence which could be pivotal in a lawsuit").

Sanctions serve two purposes: to penalize parties who do not follow the rules and to deter others tempted that abusive conduct has no consequence. *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758–59 (7th Cir. 2005); *Phillips Medical Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992). Whether the court is exercising its inherent power or invoking Rule 37, the sanction must be proportional to the abusive conduct. *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003) (stating sanction under court's inherent power "should be proportioned to the gravity of the offense"); *Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004) (stating for Rule 37 sanctions, the punishment should fit the crime). The court should consider "the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Dotson v. Bravo*, 321 F.3d 663, 667–68 (7th Cir. 2003) (internal quotation omitted).

.

## IV.    Findings of Fact

Chicago Title specifically avers that Jekogian has still insufficiently responded to paragraphs 5, 7, 8, and 9 of the September 6, 2018 letter, despite this Court's order to do so. Those paragraphs and Jekogian's responses are as follows:

Paragraph 5:

> Interrogatories 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 31, 32, 33, 34: These Interrogatories concerned the Jekogian Family Trust and the BBJ Family Irrevocable Trust, which you admitted in response to Interrogatories 15 and 16 have "substantial real estate assets" or "holdings" and, as you conceded in response to Interrogatory 13, "have made various investments in real estate and debt instruments including some partnerships that I was once a partner in and guaranteed some of the debt." On this basis alone, information about the trusts is germane to the issues in this collection matter. We are entitled to discover information regarding what holdings and assets each trust has, any transfers of money or assets between and among the trusts and you or your family and businesses, and the various other issues addressed in the Discovery Requests. For these reasons, your objections that the trusts "operate outside of [you]," are "not . . . part[ies] to this action," that "[t]he business decisions of the trusts have nothing to do with Chicago Titles [sic] claims," or that you "cannot answer for them" lack merit or any legal basis. Additionally, the term "You" is defined in the Discovery Requests to include you, "your present and former partners, employees, agents, attorneys, and all other persons acting on [you] behalf or under [your] control." Your responses must take into account the breadth of this definition. Please supplement your responses to these Interrogatories to properly address the questions asked and provide appropriate detail so Chicago Title can assess the facts that allegedly support your positions. Your current responses lack any detail or completely evade the question posed.

(Docket No. 156-1 at ECF pp. 3–4).

Jekogian's Response to Paragraph 5:

> In 2009 I personally formed the BBJ Family trust by converting an earlier trust that was to the benefit of my children. The only contribution I have personally made to the BBJ trust was approximately $25,000 in 2009. The trust is for the benefit of my family members and my father is the trustee. The use of trusts in real

estate ownership is very common. I cannot provide any other information of that trust since its [sic] an irrevocable trust and my father Nick Jekogian, Jr. is the trustee.

In 2015 my father created a generation skipping trust for his grandchildren, called Jekogian Family Trust. My sister and I are the trustees of that trust and my kids and nieces and nephews are the beneficiaries of the trust. As a trustee and not a beneficiary I do not have use of any of the trusts [sic] funds for personal reasons. I am a trustee and reimbursed for tustee [sic] level expenses only. I do not have the authority to answer any questions in regards to the trusts assets or transactions from the trust standpoint. From my personal standpoint I can answer your questions that I have not paid any money to the trust or contributed any assets into the trust. The trusts do not act on my behalf and the only actions I take on the trusts [sic] behalf are in keeping with the requirements as a trustee for the trusts [sic] interest.

(Docket No. 156-2 at ECF pp. 2–3).

Paragraph 7:

Interrogatories 25, 26, 27, 28, 29, 30: The Interrogatories asked for basic information about your finances, assets, and living situation. There is no basis to object to these Interrogatories or refuse to provide updated information (to the extent you contend you have already complied). Please promptly supplement these responses to include appropriate detail responsive to the specific Interrogatories. For example, it is insufficient to claim that your "wife often covers" some of your expenses without providing detail about where that money comes from, how much she pays, or how you survive financially on a daily basis. It is also insufficient to simply claim that you "have no personal bank account" without responding to the various other questions posed concerning stock (which you admit you own in your businesses) and other financial information requested. You must comply by responding to the questions posed.

(Docket No. 156-1 at ECF p. 4).

Jekogian's Response to Paragraph 7:

I find it impossible to provide a full accounting of my personal expenses for the past 10 years as you keep requesting. As I have pointed out repeatedly I do not keep a bank account, due to creditor issues, and my personal expense are [sic] limited and paid by my wife when possible. I travel extensively for work and most meals

10

are business related which Signature group pays for. My wife
provides breakfast, clothing and any entertainment. Our family
apartment is in the name of the Jekogian Family trust.

(Docket No. 156-2 at ECF p. 3).

Paragraph 8:

Interrogatory 35: We have asked for this information repeatedly
from you. We have yet to receive a response with any
documentation or explanation that supports the number or value of
interests you allege have priority over Chicago Title's judgment
against you. Please promptly supplement your response to this
Interrogatory and produce documentation sufficient for us to assess
the scope of remaining interests that you claim may have priority
over Chicago Title's judgment.

(Docket No. 156-1 at ECF p. 4).

Jekogian's Response to Paragraph 8:

To my knowledge the following debts have priority over the
Chicago title claims. I can only provide estimated payoffs since all
debts are accruing at default or judgement [sic] rates. The names are
the original lenders. Most debts have traded hands a number of times
since going into default.

Prudential Insurance – Approx $16,000,000
Masuda Family Trust - $3,00,000
Adar Family trust - $2,000,000
United First bank - $1,000,000
Stoneleigh partners - $2,000,000
Signature partnerships - $3,500,000
IRS and various state taxes - $800,000
Misc banks acquired by other banks in the recession - $1,000,000
Various debts in NY - $1,000,000

(Docket No. 156-2 at ECF p. 3).

Paragraph 9:

Requests for Production 1-19: As mentioned above, we only
received two documents in response to the 19 requests for
production included as part of the Discovery Requests. Instead of
producing documents we requested, or updating documents you
may have previously provided in years past, you objected to most

11

requests because they are allegedly "too broad," "outside the scope" of Chicago Title's judgment, or concern trusts that are "not . . . part[ies]" to this lawsuit. These objections are inappropriate. As previously addressed, information concerning the trusts are germane to this litigation and subject to discovery. Additionally, the scope of discovery is broad and we are entitled to the information requested. A request that you produce documents concerning your salary, stock, and befits, for instance, is not too broad to elicit a response with documents. The entire purpose of post-judgment discovery is to receive the types of documents requested. Please supplement your document production in its entirety to comply with the requests.

(Docket No. 156-1 at ECF p. 4–5).

Jekogian's Response to Paragraph 9:

Production 1-4 is covered by the dropbox link to the Presidential contract and the explaination [sic] above. #5 – See exert of the Jekogian Family trust proving that my father formed that trust. #6 – See #1-4 above. #7[3] – I do not have a recording of any of our calls but I can state on the record that I would never have said the statements you provided in your letter. I don't know what other evidence I can provide to disprove your recollection of the call. All the other statements that I have made in writing under oath have said almost the complete opposite of what you are saying you heard on our call and that doesn't make any sense and is not true. #8-18- As discussed above the BBJ trust received a small amount of funding from me when formed in 2009. It is completely independent of me and makes investments on its own behalf and not in my interest. Again the use of trusts in the real estate business is very common for real estate investors and their families for both tax and investment reasons. The use of these trusts was in no way related to your client debts or to protect me personally. I can only provide information from my personal standpoint and again state that the only personal cash or asset contribution to the BBJ trust was in 2009 for $25,000. The trust does not pay any of my personal debts or act as my alter ego. The Jekogian family trust was formed by my father and I have made no contributions to that trust, am not a beneficiary of the trust, I am a trustee for the trust and as such have a duty to

---

[3] Despite Chicago Title's paragraph #9 focusing on Jekogian's responses to its Requests for Production, Jekogian appears to be addressing Chicago Title's Interrogatory 7. (Docket No. 152-3 at ECF p. 8) ("Identify all facts that support Your denial of Admission 15, where You deny having a conversation with Matthew Olsen on February 1, 2018 during which you claimed to make 'lots of money' that You immediately transfer to Your family through the Jekogian Family Trust and/or the BBJ Family Irrevocable Trust.").

protect the assets and investments of the trust for the benefit of the trust and its beneficiaries. The trust holds its own bank accounts and accounting and is operated completely separate from my personal debts.

(Docket No. 156-2 at ECF p. 3). Jekogian did not sign or otherwise verify his responses.

## V.    Conclusions of Law

Jekogian admits that he created the BBJ Family Trust in 2009 and made a personal contribution of approximately $25,000 (Docket No. 156-2 at ECF p. 2). He asserts that he cannot provide any other information of that trust since it is an irrevocable trust and his father is the trustee. (*Id.*). Likewise, Jekogian argues that he is merely a trustee of the Jekogian Family Trust and, therefore, receives no benefit from that trust, which is purported a generation skipping trust created by his father. (Docket No. 156-2 at ECF p. 2). However, he also admits that the family apartment, where he lives, is in the name of the Jekogian Family Trust. (Docket No. 156-2 at ECF p. 3). Moreover, the Court previously ordered Jekogian to answer the discovery in a manner responsive to the September 6, 2018 letter. (Docket No. 153). Jekogian chose not to respond to either the underlying *Motion to Compel* (Docket No. 153) nor this instant motion, making it further unacceptable that he inadequately responded to the September 6, 2018, letter regarding discovery response failures. *See Cox v. Sherman Capital LLC*, 2014 WL 712659, No. 1:12-cv-01654-TWP-MJD (S.D. Ind. Feb. 24, 2014) ("Failure to raise an objection to a [discovery request] in a timely manner waives the responding party's right to assert the objection at a later time."). Accordingly, information regarding what holdings and assets each trust has, any transfers of money or assets between and among the trusts and Jekogian or his family and businesses, should have been disclosed. Jekogian's failure to do so violates this Court's order.

Despite multiple discovery requests from Chicago Title, despite this Court compelling Jekogian to produce documents responsive to Chicago Title's discovery requests, and despite

countless efforts by Chicago Title to work informally with Jekogian outside of this Court to retrieve the information sought, Jekogian has instead avoided producing evidence unfavorable to his position. These actions, along with an overall pattern of noncompliance discussed in detail above, displays a level of bad faith sufficient to warrant Rule 37 sanctions. *See Newman*, 962 F.2d at 591; *see also*, *Murray v. Conseco, Inc. et al.*, 1:03-cv-1701-LJM-JMS (S.D. Ind. Nov. 5, 2018) (Docket No. 424, *Entry Regarding Motion to Compel and Motion to Lift Discovery Stay, and Report and Recommendation Regarding Motion for Sanctions*).

As discussed, Jekogian has represented in prior discovery that his trusts have "substantial real estate assets" and that they were created to benefit his family. Jekogian has avoided responding to discovery, despite this Court's orders, on the conclusory (unsigned) responses that he made limited personal contributions and receives no benefits from these trusts. Yet, the evidence Chicago Title does have to present suggests Jekogian's limited responses are not entirely forthcoming. In Jekogian's responses to Chicago Title's requests for admissions Jekogian admits to being the Chairman and Chief Executive Officer of Presidential Realty Corporation, he admits to creating the BBJ Family Trust, he admits that his father and family members are beneficiaries of that trust, that his father is the trustee of that trust, and that the trust is a (controlling) shareholder of the company for which he is the Chairman and CEO. (Docket No. 152-2 at ECF pp. 4–6; Docket No. 156-2 at ECF p. 2). He also admits that his family members are beneficiaries of the Jekogian Family Trust and that he is the trustee of that trust, which owns the family's apartment, where he resides. (Docket No. 152-2 at ECF p. 6; Docket No. 156-2 at ECF p. 3). Jekogian admits that "[a]t or after the time You knew Chicago Title had a claim against You related to this lawsuit, You also incurred debt or other obligations to the Jekogian Family Trust or the BBJ Family Irrevocable Trust upon either or both trusts purchasing

at a discount Your debt or other obligations owed to other creditors." (Docket No. 152-2 at ECF p. 8). Thus the trusts, which benefit Jekogian's family, have substantial real estate assets, and which hold shares in a company run by Jekogian, have been intervening to alleviate Jekogian's financial burdens other than the Judgment.

Because the nature of the information sought in Chicago Title's unanswered discovery, which this Court ordered Jekogian to answer, was directly relevant to the issue of whether Jekogian has fraudulently transferred money or hidden assets from Chicago Title, the undersigned **recommends** the Court **grant** the motion as to Chicago Title's request that it be conclusively established that Jekogian has fraudulently transferred money or hidden assets from Chicago Title. *See, e.g.*, Ind. Code §§ 32-18-2-14, 15.[4] *See also Logan v. Gary Cmty. Sch. Corp.*,

---

[4] Ind. Code § 32–18–2–14(a):

> A transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>   (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>   (B) Intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

Ind. Code § 32-18-2-15(a):

> A transfer made or an obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:

2009 WL 187811 at *2 (N.D. Ind. Jan. 23, 2009) (holding that because defendants failed to answer discovery that *directly relates* to three affirmative defenses, the court sanctioned defendants by striking those defenses). The undersigned **recommends** the Court **deny** Chicago Title's request that it be conclusively established that Jekogian has committed fraud in the criminal context, Ind. Code § 35-43-5-4, as Chicago Title has provided no basis as to why a conclusive finding as to a criminal statute would be an appropriate sanction under Rule 37. The undersigned **recommends** that the Court grant Chicago Title's request that the trust's assets should be made subject to execution by this Court in order to satisfy Chicago Title's Judgment due to the fraudulent manner in which the trusts have been utilized by Jekogian.

This recommended sanction does not foreclose the trusts' beneficiaries' abilities to defend against liability as the alleged transferee of an intentional fraudulent transfer. Indiana law prevents a creditor from recovering intentional fraudulent transfers where the transferee can establish that he or she took the assets "in good faith and for a reasonably equivalent value." Ind. Code § 32–18–2–18(a). The recommended sanctions are not a "judgment" against the trusts. *See e.g.*, *Murray v. Conseco, Inc.*, No. 1:03-cv-1701-LJM-JMS, 2009 WL 363803, at *2 (S.D. Ind. Feb. 6, 2009).

Chicago Title also asks that this Court conclusively conclude that Jekogian has committed constructive fraud. "Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage,

---

(1) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
(2) The debtor:
   (A) Was insolvent at that time; or
   (B) Became insolvent as a result of the transfer or obligation.

16

irrespective of the actual intent to defraud." *Yeager v. McManama*, 874 N.E.2d 629, 641 (Ind. Ct. App. 2007) (citing *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990)). Constructive fraud is inferred by law "from the relationship of the parties and the circumstances which surround them." *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind. 1991). Constructive fraud requires:

> (i) A duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining part as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

> *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996).

While Jekogian has violated his duty to Chicago Title under the Federal Rules of Civil Procedure to accurately and completely respond to the discovery request served upon him, Chicago Title's conclusory argument regarding reliance is unpersuasive. Chicago Title argues "it relies upon the information it receives from Jekogian, and it has been injured by not receiving the information it has sought[.]" (Docket No. 156 at ECF p. 13). But Chicago Title cannot argue that it has relied upon Jekogian's answers regarding the trusts to its injury given the above-discussed recommendations, which are awarded to prevent injury. The undersigned does not find further sanction utilizing the common law constructive fraud theory appropriate.

Next, Chicago Title seeks attorneys' fees and costs incurred in these post-judgment proceedings, aside from those attorneys' fees already awarded to Chicago Title by this Court. (Docket No. 156 at ECF p. 14). Chicago Title points to *Houston v. C.G. Sec. Services, Inc.*, 302 F.R.D. 268 (S.D. Ind. 2014), where this Court imposed a significant monetary fine for all attorney time and expenses attributable to the moving party's work related to discovery in the matter. *Id.* at 282. The Court found the non-movant party's conduct constituted "a pattern of

obstreperous discovery behavior from the outset of its appearance in this case that continued to the very last discovery it provided[.]" *Id.* at 280. The Court acknowledged that this amount would likely be substantial but found that it was "just and proportional" considering the misconduct. *Id.* at 282.

Fed. R. Civ. P. Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to [subsection (b)(2)(A)(i)-(vii)] the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Given Jekogian did not respond to this motion for sanctions nor is there any evidence of substantial justification or other circumstances, at the very least, an award for the reasonable expenses Chicago Title has incurred as a result of Jekogian's failure to comply with the Court's November 5, 2018 (Docket No. 153) is appropriate. Jekogian has shown a blatant disregard for the proceedings in this matter, as discussed above. He has failed to appear before this Court numerous times. Jekogian's actions (or lack thereof) have not only caused Chicago Title to incur unnecessary fees and expenses, but have also needlessly required the Court to use valuable time and energy to address his many discovery, and other, misconducts.

The undersigned notes that on December 16, 2016, after failing to appear at a proceeding supplemental hearing and in response to one of this Court's Show Cause Orders (Docket No. 135), Jekogian stated that he did not receive notice of the November 29, 2016 proceedings supplemental hearing (Docket No. 137) despite the fact that the Court record shows proper service occurred. (Docket No. 133). Based on Jekogian's statements, the Court vacated the show cause hearing. (Docket No. 138). Chicago Title made clear that it disagreed with Jekogian's response, but that it did not intend to file anything in that regard. (Docket No. 139). Out of an

18

abundance of caution, the undersigned does not find that attorneys' fees and costs related to the November 29, 2016, proceeding supplemental hearing nor the resulting show cause, should be recoverable. However, a just and proportionate punishment is one related to Chicago Title's efforts from the time judgment was entered in this matter, aside from those attorneys' fees already awarded to Chicago Title by this Court and aside from those incurred related to the November 29, 2016, proceeding supplemental hearing or the resulting show cause order. [5]

Finally, Chicago Title requests that Jekogian be held in civil contempt for his violation of this Court's November 5, 2018 and January 22, 2019 orders. (Docket No. 156 at ECF p. 14). Chicago Title requests that the Court should impose a fine on Jekogian that would "coerce Jekogian's compliance with this Court's order and compensate Chicago Title for the delay and abuse caused by Jekogian." (*Id.*). A court's civil contempt sanction is intended to be remedial and for the benefit of the complainant (to either compensate or to coerce) whereas its criminal contempt sanction is punitive. *International United, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827–28 (1994). Chicago Title requests a fine that would coerce Jekogian to comply with this Court's orders and to compensate Chicago Title for Jekogian's violations of the November 5, 2018 and January 22, 2019, orders. However, the undersigned has already recommended, pursuant to the Court's inherent authority, attorneys' fees and costs incurred post judgment in this matter (with a few exceptions). While a finding of civil contempt may be appropriate, further sanctions for the same misbehavior already addressed would be punitive, not

---

[5] The Court's record shows that the Court did not send the January 22, 2019, order on Mr. Jekogian nor order Chicago Title to complete service of the same. Thus, the undersigned does not base any of his recommendations on Mr. Jekogian's failure to comply with the January 22, 2019, order. The Court will issue a separate entry directing the Clerk to send the entry to Mr. Jekogian and permitting additional time to comply with the entry. For this reason, the undersigned does not recommend any fees or costs incurred subsequent to and related to the January 22, 2019, order be recoverable under this sanction recommendation.

remedial, and thus an inappropriate use of civil contempt. The undersigned **recommends** the District Court deny Chicago Title's request for additional sanctions under a finding of civil contempt.

### VI.    Conclusion

In sum, the undersigned **RECOMMENDS** Chicago Title's *Motion to Hold Judgment Defendant in Contempt of Court and for Sanctions* be **granted in part and denied in part**. Specifically, the undersigned **recommends**:

1. It be conclusively established that Jekogian has fraudulently transferred money or hidden assets from Chicago Title. *See, e.g.*, Ind. Code §§ 32–18–2–14, 15;

2. Chicago Title's request that it be conclusively established that Jekogian has committed fraud in the criminal context, Ind. Code § 35–43–5–4 be **denied**;

3. Chicago Title's request that it be conclusively established that Jekogian has committed constructive fraud be **denied**;

4. That the BBJ Family Irrevocable Trust and the Jekogian Family Trust assets be subject to execution by this Court in order to satisfy Chicago Title's Judgment due to the fraudulent manner in which the trusts have been utilized by Jekogian;

5. Jekogian, individually, should be precluded from disputing the Court's findings regarding Jekogian's fraudulent transfer and fraudulent activities in this case (per the above discussion, this would not prevent the trusts from seeking any remedy available, if appropriate);

6. Chicago Title's request for fees and costs incurred in these post-judgment proceedings, aside from those attorneys' fees already awarded to Chicago Title be **granted**, excluding the activities outlined within this recommendation. It is further

recommended that Chicago Title shall provide an affidavit of its attorneys' fees for the Court's review within **fourteen (14) days of the District Court's order on this Report and Recommendation**; and

7. That Chicago Title's request for additional sanctions under a finding of civil contempt be **denied.**

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Chicago Title is directed to serve this order on Mr. Jekogian **no later than September 25, 2019** and to promptly file proof of the same.

**SO RECOMMENDED.**

**Dated:** September 20, 2019

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana


Distribution to all ECF-registered counsel of record.

Distribution via first-class mail to:

Nickolas W. Jekogian
III Signature Group Investments, LLC
1430 Broadway, Suite 503
New York, NY 10018

Nickolas W. Jekogian
III 171 E. 84th Street, Apt. 28E
New York, NY 10028